In the Matter of NANCY G. SCHLOSSER, Appellant, v BOARD OF EDUCATION OF THE EAST RAMAPO CENTRAL SCHOOL DISTRICT OF TOWN OF RAMAPO, Respondent. SHERI ALPERT et al., Intervenors-Respondents.

In the Matter of CLAIRE GREENWALD et al., Appellants, v BOARD OF EDUCATION OF THE EAST RAMAPO CENTRAL SCHOOL DISTRICT et al., Respondents. SHERI ALPERT et al., Intervenors-Respondents.

In the Matter of RUTH ELKIND et al., Appellants, v BOARD OF EDUCATION OF THE EAST RAMAPO CENTRAL SCHOOL DISTRICT et al., Respondents. SHERI ALPERT et al., Intervenors-Respondents.

In the Matter of NORMA KOBB, Appellant, v BOARD OF EDUCATION OF THE EAST RAMAPO CENTRAL SCHOOL DISTRICT, Respondent. SHERI ALPERT et al., Intervenors-Respondents.

Second Department, April 24, 1978

---

### APPEARANCES OF COUNSEL

*Eugene M. Kaufman* for Nancy Schlosser and another, appellants.

*Guazzo, Silagi, Craner & Perleson, P. C. (Stephen A. Perelson* of counsel), for Claire Greenwald and others, appellants.

*Schwartz, Kobb, Scheinert & Hamerman (Joel L. Scheinert* of counsel), for Norma Kobb, appellant.

*David Greenberg* for respondent.

*Paul E. Klein (Deborah A. Watarz* of counsel), for Sheri Alpert and others, intervenors-respondents.

*Charles D. Maurer* for Cynthia Diamond and others, intervenors-respondents.

### OPINION OF THE COURT

HOPKINS, J. P.

The petitioners in these proceedings are all teachers in the East Ramapo Central School District. Although in some respects the factual patterns differ, the appeals share one common issue: was the provision granting tenure credit for part-time teachers in the collective bargaining agreement between the East Ramapo Teachers Association and the East Ramapo Central School District valid and enforceable? Because this issue is primary to the determination of the appeals, we shall discuss it generally before considering the particular circumstances pertinent to the individual appeals.

### I

In June, 1976 the board of education decided to terminate all part-time teaching in a program established in 1967 called the "Ramapo Plan for the Individualization of Instruction". The petitioners had been hired as part-time elementary intensive teachers pursuant to the plan. The plan envisaged that a teacher would give specialized instruction to certain groups of students who would leave their regular classrooms for instructional assignments with the teacher and then return to their classrooms. A principal might elect a part-time or full-time program for such students within his school. The collective bargaining agreement covering personnel hired prior to July, 1971 provided that part-time teachers would receive the same tenure rights as full-time teachers on a year for year basis. After 1971, subsequent agreements provided that part-time teachers hired under those agreements would receive up to two years of credit, on a pro rata basis, toward completion of their probationary periods. Many of the petitioners were given tenure, and all believed that they were working towards accumulating seniority credit.

When, in June, 1976, the board of education decided to eliminate the part-time programs for intensive teachers, it took the position that the collective bargaining agreements giving tenure and seniority credits to part-time teachers were

illegal and unenforceable. Proceeding under this assumption, the board terminated the part-time teachers on an *ad hoc* basis, giving no credit to time accrued in the program. It offered some teachers full-time employment or part-time employment in other areas; however, the offers were not based on seniority considerations. All of the petitioners were terminated, even though other teachers with no tenure and less seniority continued to teach in the school district. These proceedings were then brought to require the board to comply with the terms of the collective bargaining agreements and to annul its actions in terminating the petitioners.

The proceedings were consolidated for trial, and Special Term dismissed the petitions. It held that the provision in the collective bargaining agreements granting tenure credit to part-time teachers was illegal and against public policy.

## II

We have recently determined in *Matter of Rosenberg v Board of Educ. of Westbury Public Schools* (51 AD2d 551), citing *Matter of Nyboe v Allen* (7 AD2d 882), that under the tenure statutes, part-time teaching service does not constitute probationary service for the purpose of acquiring tenure. We reaffirmed this holding in *Matter of Reisinger v Board of Educ.* (57 AD2d 868), and held, moreover, that absent certain exceptional circumstances, a part-time teacher could not acquire tenure by acquiescence and estoppel. The circumstances considered to be exceptional were the conversion of a position by the board of education from full-time to part-time and the request of the board that the teacher remain in such position (see, e.g., *Matter of Blanchard,* 14 Ed Dept Rep 260). Our determinations in those cases do not, however, reach the question now before us, i.e., whether a school board may stipulate in a collective bargaining agreement for tenure credit arising from part-time teaching.

The Taylor Law grants to the board of education broad powers to negotiate the terms and conditions of employment (Civil Service Law, § 204, subds 1, 2). In *Board of Educ. v Associated Teachers of Huntington* (30 NY2d 122, 129), the Court of Appeals described the scope of the board's authority thus: "Under the Taylor Law, the obligation to bargain as to all terms and conditions of employment is a broad and unqualified one, and there is no reason why the mandatory provision of that act should be limited, in any way, except in

cases where some other applicable statutory provision explicitly and definitively prohibits the public employer from making an agreement as to a particular term or condition of employment."

This view was slightly modified in *Syracuse Teachers Assn. v Board of Educ.* (35 NY2d 743, 744), in which *Huntington* was construed to mean that collective bargaining under the Taylor Law was restricted by "plain and clear, rather than express, prohibitions in the statute or decisional law".

The Court of Appeals, in *Matter of Susquehanna Val. Cent. School Dist. at Conklin (Susquehanna Val. Teachers' Assn.)* (37 NY2d 614, 616-617), added to the limits on the power of the board by stating that "[p]ublic policy, whether derived from and whether explicit or implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate." In *Susquehanna* the court sustained a provision which regulated class size and staff size, holding that no restrictive policy, however derived, limited the freedom of the board to contract on these subjects. In *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.* (40 NY2d 774), the court found that it was against public policy for the board to agree to diminish its authority to terminate, without just cause, the employment of a nontenured teacher at the end of a probationary period. On the other hand, collective bargaining may provide for supplemental procedural steps preliminary to the board's final action to grant or to withhold tenure *(Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167). It is within this frame of reference that we must consider the validity of the terms of the collective bargaining agreements under examination.*

■ We find no binding precedent holding that the board cannot contract to give part-time teachers credits looking toward tenure and seniority rights. It is claimed by the board of education that the provisions violate public policy and should not be enforced, but we see no "plain and clear" prohibition in the statutes against the power of the board so to bargain. In *Matter of Moritz v Board of Educ.* (60 AD2d 161, 166-167), the Fourth Department analyzed the tenure statutes and held that there was nothing in the law which

---

* We consider that *Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.)* (42 NY2d 509) does not bear on the issue of the power of school boards to bargain collectively, but rather on the procedure to be followed in ascertaining whether a given controversy is arbitrable.

limited probationary employment or tenure to full-time teachers, saying: "The Legislature has delegated to boards of education broad power to hire and fire teachers (see Education Law, §§ 2503, 2554). This power was formerly exercised by employment contracts between the board and the individual teacher which were renewed annually if they were renewed at all. The tenure statutes (Education Law, §§ 3012, 3013) were enacted to alter this practice, to change teachers' employment from a system of tenure by contract terminating automatically after the expiration of the school year to one of permanence *(Walcott v Fisher,* 274 App Div 339, affd 299 NY 688; *Matter of Carter v Kalamejski,* 255 App Div 694, 697, affd 280 NY 803). The primary purpose of the legislation was to assure security to competent teachers in positions to which they have been appointed *(Matter of Boyd v Collins,* 11 NY2d 228; *Matter of Monan v Board of Educ.* [280 App Div 14] *supra),* and it should not be interpreted in such a way that the board's improper acts are found void for the purpose of defeating a teacher's rights. Nothing in the tenure statutes expressly limits probationary employment or tenure to full-time teachers and inasmuch as the statute is in derogation of the board's common-law right of contract, it is to be narrowly construed *(Matter of McMaster v Owens,* 275 App Div 506). Court decisions have properly held that full-time service is required before the board may grant tenure, but the statute does not. Thus, although the board's action in this case was improper, it was within its broad power of employment and not *ultra vires."*

In *Matter of Abbruscato* (16 Ed Dept Rep 361 [April 29, 1977]), the Commissioner of Education held that it was not against public policy to provide seniority credit for part-time or substitute teachers. However, the clause in the contract there under review was operative only with regard to those teachers serving in a probationary or tenured capacity at the time a position was abolished. In that case the petitioner had been granted tenure on September 7, 1976. Her position was abolished on September 8. She claimed that another teacher who had taught part-time, and had, as well, some full-time experience, had less seniority than she. The collective bargaining agreement grouped all part-time and full-time teachers together in computing seniority. The commissioner allowed the agreement to control, citing *Board of Educ. v Lakeland Federation of Teachers, Local 1760, Amer. Federation of*

*Teachers, AFL-CIO* (51 AD2d 1033, 1034), where this court said: "In a recent case involving seniority rights, there was recognition that a board of education and a teacher's union had the power to more fully define and expand the seniority rights of teachers and that to do so would not violate subdivision 2 of section 2510 of the Education Law *(Matter of Dreyfuss v Board of Educ. of Union Free School Dist. No. 3, Town of Huntington,* 76 Misc 2d 479, 486, affd 45 AD2d 988). Additionally, there is no support for Special Term's conclusion that the board could not recognize past service in the district for purposes of seniority because to do so would violate public policy."

In *Matter of Rosenberg v Board of Educ.* (51 AD2d 551, *supra),* our decision that part-time teachers could not gain tenure by estoppel or acquiescence was based on the ground that the statute did not include a probationary period for part-time teachers, and not on a specific or implicit public policy disallowing part-time teachers probationary credit in any event.

The concern of the statute legislating tenure is clearly designed to ensure competent and efficient teachers within the school system. Thus, in *Matter of Weinbrown v Board of Educ.* (28 NY2d 474), the court found that a teacher's tenure notice was effective and binding even though it had been sent five months short of the three-year period. The Legislature recently changed this three-year probationary period into a two-year probationary period for teachers possessing certain experience (Education Law, § 3012 [L 1975, ch 140]). In addition, the statute now allows up to two years of probationary credit for substitute teaching (Education Law, § 2509 [L 1974, ch 735]). It is self-evident that part-time teaching supplies both the opportunity for the development of skill in instruction and class management, as well as the accumulation of experience, per se. In arriving at mutually beneficial terms of a collective bargaining agreement, the board and the union might well contemplate the inclusion of credits arising from part-time employment on a regularly scheduled basis or otherwise as advantageous in determining eligibility for tenure within the school system. We perceive nothing in that arrangement as intrinsically violative of the principles of tenure.

We find, accordingly, no "plain or clear prohibition, implicit or explicit" against a provision for credits earned by part-time teachers toward tenure or seniority in labor contracts. Hence,

the petitioners are entitled to have their part-time credit determined according to the terms of the collective bargaining agreement under which they were hired.

### III

We now turn to the particular circumstances in these proceedings under which it is contended that certain of the petitioners, even without the specific provisions of the collective bargaining agreement, may be entitled to tenure.

■ Leatrice Lifschitz was appointed as a reading specialist on May 14, 1969 and was granted tenure on April 12, 1972. She worked on a full-time basis and then was assigned to a part-time position by the board, which told her that she would not lose any seniority or tenure rights. Under these facts, under the rubric of the exception recognized in *Matter of Blanchard* (14 Ed Dept Rep 260, *supra),* she may be entitled to tenure without more.

The facts alleged in the case of Norma Kobb are similar to those in the case of Ms. Lifschitz. She was also requested by the board to transfer from a full-time intensive teacher position to a part-time position. In July, 1972, after having received tenure, she received a letter from the board informing her she would be reassigned to a part-time position because of the board's requirements. Hence, she may also have a double claim to tenure—under the collective bargaining agreement, as well as the statutory exception.

All of the petitioners were hired at differing times, some being granted tenure, and all having credit for seniority. We do not have sufficient information to determine in each case either the extent of credits provided for by the collective bargaining agreements in force during the period of service claimed by the petitioners or the identity of the parties covered by such agreements. Those issues must be decided at a plenary hearing.

■ Another issue has been raised by the parties which is important in determining the tenure and seniority of each of the petitioners. The petitioners claim that an intensive teaching position in these cases is part of the elementary tenure area. This issue was never treated at Special Term, and the board, although denying this allegation in its answer, has not presented any facts to support the denial. Two cases recently decided by us, *Waiters v Board of Educ.* (61 AD2d 1011) and

*Matter of Neer v Board of Educ.* (61 AD2d 1014), hold that the intent and policy of the school district in creating a program are controlling. If the school district treats a program as part of the elementary tenure area, then it is part of the broader horizontal tenure area. If it is treated as a special program and a separate subject area, then it may be in the vertical tenure area. This issue should also be decided at the plenary hearing before Special Term, after the introduction of evidence by the parties on the extent, purpose and effect of the program.

Accordingly, the judgments should be reversed and the petitions reinstated. A hearing should be held to determine the tenure and seniority status of the petitioners, in accordance herewith.

MARTUSCELLO, LATHAM and GULOTTA, JJ., concur.

Four judgments (one in each proceeding) of the Supreme Court, Rockland County, entered August 25, 1977 (Schlosser proceeding), October 7, 1977 (Elkind proceeding), September 14, 1977 (Greenwald proceeding) and September 15, 1977 (Kobb proceeding), reversed, insofar as appealed from, on the law, without costs or disbursements, petitions reinstated, and proceedings remanded to Special Term for a plenary hearing to determine the tenure and seniority status of the petitioners in accordance with the opinion herein.