Helene COHEN, Plaintiff,

v.

The BOARD OF EDUCATION OF the EAST RAMAPO CENTRAL SCHOOL DISTRICT, et al., Defendants.

No. 79 Civ. 6457 (PNL).

United States District Court, S. D. New York.

March 31, 1982.

Mark S. Rushfield, New York City, for plaintiff.

Stephen Fromson, New York City, for defendants.

### OPINION AND ORDER

LEVAL, District Judge.

Plaintiff Helene Cohen, a teacher formerly employed by defendant Board of Education of the East Ramapo Central School District, brings this action against the Board and two named individual administrators for damages and injunctive relief pursuant to 42 U.S.C. §§ 1981, 1983 and the Fourteenth Amendment. Plaintiff alleges that she was denied her property interest in her tenured position without due process and equal protection of the law. Defendant's motion to dismiss on the ground of res judicata, collateral estoppel, failure to join an indispensable party, and failure to state a claim upon which relief may be granted was denied on June 9, 1980. Plaintiff now moves for an order compelling defendants to answer plaintiff's interrogatories and compelling defendants to produce for plaintiff's inspection those documents requested by plaintiff. Defendants move for summary judgment.

Plaintiff's action is based on three claims. First, she claims that she did not receive adequate notice prior to the loss of her tenured teaching position at the East Ramapo School. Second, she claims that she did not receive the constitutionally required pretermination hearing. Her last claim is that defendants' action in terminating her was arbitrary and capricious and resulted in her being treated differently from others similarly situated. Defendants claim that plaintiff's action is time-barred and, in the alternative, that she was given adequate notice, had no right to a pretermination hearing, and although treated differently from other teachers, was treated on the basis of rational differences in her situation.

*Facts*

Plaintiff was hired in September 1967 by the Board of Education of the East Ramapo Central School District to teach as an "intensive teacher" on a part-time basis. Intensive teachers were part of defendants' "Ramapo Plan for the Individualization of Instruction," which provided intensive instruction for students in the upper and lower ten percent of students as measured by a performance scale. Some of this instruction was provided by part-time teachers such as the plaintiff. Under a policy of the

defendants, adopted on December 20, 1965, part-time teachers were treated identically to full-time teachers for the purpose of determining tenure and seniority. In other words, a part-time teacher was credited with one year of teaching for each year even though he or she was only teaching part-time. The first collective bargaining agreement between defendant and the East Ramapo Central School District Teachers Association, signed in June 1968, incorporated defendants' tenure and seniority policy. Each collective bargaining agreement through June 30, 1977, continued this policy.

Under this policy, plaintiff satisfactorily completed a three-year probationary period and was appointed to serve as a tenured teacher in the elementary tenure area beginning September 1970. In September 1972, plaintiff was promoted to a full-time regular elementary teacher position. After another three-year probationary period, she was given tenure as a full-time regular elementary teacher. Her status was not changed until 1976.

In that year, defendant Board of Education was pressed by declining enrollment and by decreasing financial resources. The Board decided that it had to eliminate some tenured teaching positions. Section 2510 of the New York Education Law requires that tenured teachers be laid off or "excessed" on the basis of their seniority. N.Y. Educ.Law § 2510(2) (McKinney 1981). Pursuant to that section, the Board excessed a number of teachers on the basis of their seniority as computed at that time by Mrs. Elinor Waldman, defendant Board's Director of Personnel. In computing seniority, Mrs. Waldman used a method that deviated from prior Board policy and from the collective bargaining agreement: she computed seniority on a pro-rata basis. For example, she credited teachers who had one year of full-time teaching with one year of seniority and teachers who had taught one year on a part-time basis with one-half year of seniority. The terminations that resulted from the Board's decision and Mrs. Waldman's calculations became effective on June 30, 1976.

Within four months of the lay-offs, twenty part-time teachers who had been terminated began proceedings under Article 78 of the New York Civil Practice Law and Rules, N.Y.Civ.Prac.Law §§ 7801–7806 (McKinney 1981). *Schlosser v. Board of Education*, 62 A.D.2d 207, 404 N.Y.S.2d 871 (1978), *aff'd*, 47 N.Y.2d 811, 391 N.E.2d 1364, 418 N.Y.S.2d 388 (1979). These actions sought review of defendants' actions, reinstatement, and back pay. Although the plaintiff was aware of these proceedings, she did not join them, presumably because at the time she was not affected by the termination order.

On November 18, 1976, Mrs. Waldman met with plaintiff and informed her that there had been an error in the computation of plaintiff's seniority. That error was to be corrected, and as a result, the plaintiff and Anne Bonfield were to be laid off, and teachers Larry Denerstein and Sarah Herman were to be rehired. Mrs. Waldman indicated, however, that both plaintiff and Ms. Bonfield could continue teaching at the school on the same schedule and in the same classes as regular substitute teachers. The only difference in their employment would be their salaries and seniority: for plaintiff, it meant a salary reduction of about $8,260 and reduction of her seniority from 9.3 years to 4.3 years. What else occurred during this meeting is in dispute. On December 1, 1976, defendant Board of Education terminated plaintiff's employment as a regular tenured teacher, effective on the same day. Plaintiff was notified of this action on December 2, 1976. Plaintiff chose to continue as a regular substitute.

Sometime in December 1976, plaintiff received a notice of pendency in the *Schlosser* Article 78 proceedings. The notice indicated that certain excessed teachers had begun an action that might adversely affect the seniority of those notified. The notice indicated that those who wished could intervene in the action. Several teachers intervened on the side of defendants; some others supported in large part, but not completely, the position of the petitioners. Plaintiff did not intervene, even though her

attorney in this action also represented some of the petitioners in *Schlosser.*

In June 1977, plaintiff was terminated as a regular substitute teacher. She has not worked for defendant Board since. Under section 2510(3) of the New York Education Law, a school board that has laid off tenured teachers under section 2510(2) must establish a preferred eligible list of candidates for appointment to vacancies that may subsequently arise. N.Y.Educ.Law § 2510(3) (McKinney 1981), *amended by* N.Y.Educ.Law § 2510(3) (McKinney Supp. 1981). Excessed teachers with the most seniority are to be placed at the top of the list. Although not required to, defendant Board has had a policy of filling regular substitute positions that arise from the preferred eligible list. Plaintiff was placed on the list at the position determined by her seniority as calculated by Mrs. Waldman on the pro-rata basis. Several positions have opened, but not a sufficient number to require the Board to rehire the plaintiff, given the pro-rata calculation of plaintiff's seniority. If seniority had been calculated on the full-credit basis, plaintiff would have been credited with seniority sufficient to require the Board to rehire her from the preferred eligible list.

In May 1977, plaintiff and Anne Bonfield brought an Article 78 proceeding against defendants in the Supreme Court, Rockland County. *Bonfield v. Board of Education,* No. 3019 (N.Y.Sup.Ct. June 22, 1977) [hereinafter cited as *Cohen I*]. On July 18, 1977, Justice Beisheim of the Supreme Court, Rockland County, entered a judgment in favor of the Board of Education in *Schlosser.* This judgment was reversed on May 17, 1978, by the Appellate Division, which held that the Board was required to compute the part-time teachers' seniority on the basis of the full-credit method contained in the collective bargaining agreements and in the Board's policy. The action was remanded to the Supreme Court.

One month after the reversal in *Schlosser,* Justice Silberman filed his opinion in *Cohen I.* He found that, although the result was unfortunate in light of the Appel-

late Division's decision in *Schlosser,* plaintiff's Article 78 action was time-barred by the four-month statute of limitations for such actions. He held that she could not attack defendants' recalculation of her seniority because more than four months had passed between the time that her cause of action accrued, December 2, 1976, and the time that she filed her complaint, May 6, 1977. This decision was subsequently affirmed by the Appellate Division and leave to appeal to the Court of Appeals was denied.

Plaintiff filed another Article 78 proceeding on December 26, 1978, alleging that positions had become vacant and then filled in violation of her right to be rehired under N.Y.Educ.Law § 2510(3). *Cohen v. Board of Education,* No. 233 (N.Y.Sup.Ct. Sept. 4, 1979) [hereinafter cited as *Cohen II*] Justice Kelly, in the Supreme Court, Rockland County, dismissed plaintiff's petition. He found that her claim was not time-barred because she had alleged a violation that occurred on or about September 1, 1978. He based his dismissal instead on the fact that her claim relied on a determination of her seniority under a full-credit system, but that the decision in *Cohen I* had determined that, as to the plaintiff, her seniority was as the Board had determined it in 1976 on the pro-rata basis.

In the meantime, Justice Marbach was considering *Schlosser* on remand. On September 13, 1979, Justice Marbach ordered that teachers beginning employment after December 20, 1965, and prior to July 1, 1971, be granted seniority on a full-time basis regardless of whether they were full-time or part-time. The parties dispute whether that order was to apply to all teachers in the East Ramapo School District or only to the petitioners in the *Schlosser* proceeding.

Most recently, the Appellate Division reversed Justice Kelly's decision in *Cohen II.* 84 A.D.2d 536, 443 N.Y.S.2d 170 (1981). The Appellate Division found that "the only issue decided in the prior proceeding [*Cohen I*] was that petitioner's claim pursuant to subdivision 2 of section 2510 of the Educa-

tion Law was barred by the applicable Statute of Limitations." *Id.* at 537, 443 N.Y. S.2d at 172. Because *Cohen II* is based on events that occurred after the commencement of *Cohen I*, the dismissal in *Cohen I* is not res judicata in *Cohen II*. The Appellate Division also found that the dismissal in *Cohen I* was "based exclusively upon the technicalities of CPLR 217 as it related to the cause of action there pleaded. Neither petitioner's claim to additional seniority credit, nor the question of whether said claim may have been barred by the doctrine of laches was adjudicated therein .... Thus, petitioner is not collaterally estopped from contesting the propriety of respondents' computation of her seniority in the present proceeding to enforce her rights pursuant to subdivision 3 of section 2510 ...." *Id.* The action was remanded.

*Discussion*

I

■ The threshold issue raised by defendants' summary judgment motion is whether plaintiff's action is time-barred. The Court of Appeals has held that the three-year statute of limitations, N.Y.Civ.

Prac.Law § 214(2), applies to actions brought under 42 U.S.C. § 1983. *Singleton v. City of New York*, 632 F.2d 185, 189 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). The same limitation period applies to actions under 42 U.S.C. § 1981. *Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 (2d Cir. 1978). The complaint was filed by plaintiff on November 30, 1979, and served on defendants on December 4, 1979. Defendants in pressing this point take two approaches. They argue first that the cause of action accrued on November 18, 1976, when Mrs. Waldman informed plaintiff of the recomputation of her seniority. They also argue that under state rules, the limitations period is not tolled until the date on which the defendant is served. Plaintiff responds that the action did not accrue until defendant Board formally terminated plaintiff on December 2, 1976, and that the statute of limitations counts to the date plaintiff filed her complaint. Plaintiff also argues that her complaint sets forth continuing violations by defendants of her due process and equal protection rights.[1]

1. Because I resolve this issue on other grounds, I do not address plaintiff's assertion of a continuing violation. Whether plaintiff has made sufficient allegations to support the continuing violation theory is unclear. The best statement of the continuing violation theory is contained in the Fifth Circuit's opinion in *Clark v. Olinkraft, Inc.*, 556 F.2d 1219 (5th Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978). The basis for the theory, in the Title VII context, is the present existence of a system or practice that discriminates against a plaintiff at every minute, not merely one that fails to remedy the effects of past discrimination. *Id.* at 1222. Judge Wisdom, quoted an earlier continuing violation case, *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348 (10th Cir. 1975), for the proposition that the failure to promote is distinguishable from the failure to hire. 556 F.2d at 1222. In *Rich*, plaintiffs challenged the entire promotion system rather than individual refusals to hire. 522 F.2d at 348.

The Supreme Court's decision in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), ratified this distinction. Evans was fired illegally in 1968 and ·rehired in 1972. Her suit, filed in 1973, alleged that appellant had illegally fired her in 1968 because she had married, and that appellant had continued to discriminate against her in

1973 because its seniority system treated her less favorably than males hired after 1968 and because the seniority system gave present effect to past illegal acts. The Court held that neither allegation made out a claim of present discriminatory treatment: "United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." *Id.* at 558, 97 S.Ct. at 1889. Judge Wisdom in his *Clark* opinion explicitly noted that the continuing violation theory pressed in *Evans* was different from that put forward in *Clark*. *Evans* has rejected the theory when it is based on merely the perpetuation of past discriminatory acts. The Court requires that plaintiffs challenge existing discriminatory acts, which can be either illegal systems or practices, *e.g.*, *Clark v. Olinkraft, Inc.*, 556 F.2d at 1222–23, or discrete illegal acts, *see, e.g.*, *United Air Lines, Inc. v. Evans*, 431 U.S. at 558, 97 S.Ct. at 1889 (dictum).

This case, of course, is not brought under Title VII. The principles underlying the continuing violation theory, however, may have some application. Plaintiff alleges numerous discrete violations of her constitutional rights, not any system or practice that harms her rights at every moment up to the present. Therefore,

I find that plaintiff's action is not time-barred.

### A

The first issue is when did plaintiff's claims accrue. Plaintiff has alleged violations of her constitutional rights which occurred on several specific occasions. The first claimed violation occurred on December 2, 1976, when plaintiff received notice that she was terminated (First Claim). Plaintiff also claims violations of her rights which occurred at the following times: on June 30, 1977, when she was terminated as a regular substitute teacher (Second Claim); on December 2, 1976, when she was notified that defendant Board had altered her seniority (Third and Fourth Claims); on December 2, 1976, when defendants refused to appoint plaintiff to positions similar to the one she had held as required by state law (Fifth Claim); on June 30, 1977, when defendants refused to appoint plaintiff, as required by state law, to a position similar to the one she had held (Sixth Claim); during the 1977–1978 school year and that portion of the 1979–1980 school year to date, when defendants refused, as required by state law, to reinstate plaintiff to available similar positions (Seventh Claim); and subsequent to December 2, 1976, when defendants reemployed or employed teachers in the elementary tenure area while refusing to reemploy plaintiff (Eighth Claim).

Federal law "governs the date of the accrual of federal claims" such as those asserted here. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981) (citing *Kaiser v. Cahn*, 510 F.2d 282, 285 (2d Cir. 1974)). *Singleton* was brought under 42 U.S.C. § 1983. Although applying the state statute of limitations provided in N.Y.Civ.Prac.Law § 214(2), Judge Mansfield looked to federal law for the rule that an action based on a

federal claim accrues " 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.' "[2]  *Id.* (quoting *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977), *cert. denied*, 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979)). Thus, once a plaintiff has suffered from a defendant's illegal act and once the plaintiff is aware of or should be aware of the injury, the statute of limitations begins to run.

Defendants seek to recharacterize all these claims as simply alleging an illegal recalculation of plaintiff's seniority on November 18, 1976. According to defendants, all claims by plaintiff that relate to events subsequent to the recalculation announced by Mrs. Waldman to plaintiff on November 18, 1976, are merely consequences of the original, allegedly illegal act. Defendants cite *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)): "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Chardon v. Fernandez*, —— U.S. ——, —— – ——, 102 S.Ct. 28, 28–29, 70 L.Ed.2d 6 (1981) (per curiam), in interpreting *Ricks* held that notice of termination starts the running of the statute of limitations even if the effective date of termination is sometime later. Defendants also cite *Echols v. Chrysler Corp.*, 633 F.2d 722 (6th Cir. 1980), for the proposition that plaintiff's action accrued when her seniority was recalculated rather than when she was terminated due to her loss of seniority.

The flaw in defendants' argument is its identification of what constitutes the illegal act as opposed to its consequences. In *Echols*, plaintiff lost pension credit due to a settlement of his grievance with defendant

---

the basis for her assertion of a continuing violation is unclear. I find, however, that her allegations of discrete violations are within the statute of limitations, and thus I reach no conclusions on whether her complaint asserts a continuing violation.

**2.** New York law provided a different rule for the accrual of the action. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981) (citing *Dailey v. Smiley*, 65 A.D.2d 915, 410 N.Y.S.2d 468 (1978)).

Chrysler Corporation. The settlement had been negotiated by defendant United Automobile Workers Local 212 in 1969. Plaintiff in 1975 sued under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), when he was denied early retirement as provided in the collective bargaining agreement because of his loss of pension credits under the 1969 settlement. Plaintiff, in *Echols*, based his action on the alleged illegal acts of both defendants in reducing his pension credits. The Sixth Circuit found plaintiff's action to be time-barred: the injury to plaintiff, caused by defendants, took place in 1969. *Id.* at 723–24.

Here, plaintiff is attacking, among other acts, defendants' termination of her position. Plaintiff alleges that her termination on December 1, 1976, violated her constitutional protected interest as a tenured teacher not to be terminated under N.Y. Educ.Law § 3012(2). Subsequent refusals by defendants to rehire her, she alleges, violated her constitutionally protected interest to be reemployed under N.Y. Educ.Law § 2510(3).[3] Defendants' recalculation of plaintiff's seniority is directly challenged only in plaintiff's Third and Fourth Claims. The fact that some prior event—in this case, defendants' recalculation of her seniority—has an effect on her claims does not change the time when the alleged illegal acts occurred. Therefore, I find that plaintiff's First and Fifth Claims accrued on December 2, 1976, when the Board notified plaintiff of its action. The Second,

Sixth, and Seventh Claims all accrued no earlier than 1977, well within the three-year period. The Eighth Claim accrued on or after December 2, 1979.

Only the Third and Fourth Claims arguably accrued before December 2, 1976. Defendants assert that those Claims accrued on November 18, 1976, when plaintiff was notified by Mrs. Waldman that her seniority had been recalculated. Unlike the settlement in *Echols*, which involved the employer, plaintiff's meeting with Mrs. Waldman on November 18, 1976, was merely informational and did not constitute an authoritative act by the Board to deprive her of seniority. It is unclear what authority Mrs. Waldman had to recalculate seniority and it is unclear what effect her decision would have on plaintiff. Without clarification, it would seem that some ratification by the Board would be necessary to give effect to her informal determination.

This fact also distinguishes *Chardon v. Fernandez*, —— U.S. ——, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam). In *Chardon*, respondents were nontenured administrators in the Puerto Rico Department of Education. Sometime prior to June 18, 1977, the Department notified respondents that it had decided to terminate them effective on several dates between June 30 and August 8, 1977. *Id.* at 28. The Court held that the one-year statute of limitations began to run when respondents were notified "that a final decision had been made to terminate their appointments." *Id.* at 29.[4] In this

---

3. This is not a case such as *Collins v. United Air Lines, Inc.*, 514 F.2d 594 (9th Cir. 1975), in which the plaintiff claimed that an employer's continuous rebuffs of his request to be rehired tolled the limitations statute. *Collins* found that such refusals were not independent violations. *Id.* at 596. Here, plaintiff has an independent basis in state law for attacking refusals by defendants to rehire her.

4. This interpretation of *Chardon* is supported by the dissents of Justices Brennan and Stevens. Justice Brennan argued that "[t]he plaintiff should not be penalized for leaving to the defendant an opportunity to retract his wrongful repudiation," 102 S.Ct. at 29 (Brennan, J., dissenting) (quoting 4 A. Corbin, Contracts § 989), and that the majority's decision

will "increase the number of unripe and anticipatory lawsuits in the federal courts," *id.* Justice Stevens adopted the reasoning of Judge Campbell in his opinion below for the First Circuit. "It is necessary . . . . to identify the unlawful act." *Id.* at 3342 (Stevens, J., dissenting) (quoting 648 F.2d 765, 768 (1st Cir. 1981)). Justice Stevens states that because only injunctive and not monetary relief was available to respondents prior to the actual termination, the "unlawful act" occurred when the terminations became effective.

The majority rejected these arguments and decided that the date of the "final decision" was determinative. Both dissents acknowledged that the "final decision," or notice of it, did occur on June 18, 1977. They differed from the majority in the importance the final deci-

case, that "final decision" occurred on December 1, and plaintiff received notice on December 2, 1976. If on November 18, 1976, the Board itself had taken formal action to reset plaintiff's seniority, *Chardon* and *Echols* would be of precedential value for this case. The Board's authoritative ratification, however, occurred on December 1, 1976. Until plaintiff received notification of the Board's action, her injury was only a possibility. Therefore, I find that the Third and Fourth Claims also accrued when plaintiff was notified on December 2, 1976.

## B

Defendants' second basis for arguing that the action is time-barred can affect only those claims that accrued no later than December 3, 1976—the First, Third, Fourth, and Fifth Claims. Defendants argue that the action was not commenced until December 4, 1979, when plaintiff served defendants with the complaint. Defendant cites *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), and *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), for the proposition that "where a federal action is governed by a 'borrowed' state statute of limitations, state law governs the issue of when the action is commenced in federal court for purposes of tolling the statute of limitations." Defendants' Reply Memorandum at 18. Defendants argue that *Tomanio* and *Walker* have overruled the Second Circuit's position on this subject, first stated in *Bomar v. Keyes*, 162 F.2d 136, 140 (2d Cir.), *cert. denied*, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947). I do not agree.

*Bomar* held that, in a federal civil rights action, the Federal Rules of Civil Procedure make the filing of the complaint the event that commences an action. *Id.* Since that decision, two lines of Supreme Court cases have addressed similar, but not identical, problems. The first line, of which *Board of Regents v. Tomanio* is the latest pronounce-

ment, addresses statutes of limitations and related tolling rules in actions based on federal law. The second line, of which *Walker v. Armco Steel Corp.* is the most recent, addresses the issue of when an action begins in diversity cases.

The three cases in the first line have dealt with events that allegedly toll or suspend state statutes of limitations and other state rules for the maintenance of actions. In *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the plaintiff had filed a charge with the EEOC on May 31, 1967. Almost four years later, on January 15, 1971, the EEOC gave him notice of his right to sue under Title VII; he filed a Title VII suit on February 12, 1971. In a supplemental complaint filed March 18, 1971, he added a claim under section 1981. *Id.* at 455–56, 95 S.Ct. at 1717–18. The applicable Tennessee statute of limitations was one year. The Court held that the filing of an employment discrimination charge with the EEOC did not toll the running of the statute of limitations because Tennessee law did not permit such a tolling. The state rule should be followed unless the application of the state rule "would be inconsistent with the federal policy underlying the cause of action under consideration." *Id.* at 465, 95 S.Ct. at 1722.

*Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), involved the application of a state rule of survivorship in a section 1983 action. Clay L. Shaw filed a section 1983 suit against appellees alleging a bad faith prosecution. Before trial, Shaw expired and appellee Wegmann, executor of Shaw's estate, was substituted. Appellant moved for dismissal on the ground that, under Louisiana law, Shaw's action abated upon Shaw's death. *Id.* at 587, 98 S.Ct. at 1993–94. The Court held that 42 U.S.C. § 1988 required the application of the state law in an area in which federal law is deficient and when the state law is "not inconsistent with the Constitution and laws of the United States." *Id.* at

sion should be accorded. In the case here, the majority's final decision requirement was not

met until at least December 1, 1976.

588, 98 S.Ct. at 1994 (quoting *Moor v. County of Alameda*, 411 U.S. 693, 703, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973)).[5] The trial court's denial of the motion to dismiss was reversed.

*Board of Regents v. Tomanio*, 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980), the most recent decision, held that New York tolling rules were applicable in section 1983 actions unless inconsistent with federal law. Tomanio, who was denied a chiropractic license by appellant on November 22, 1971, commenced a state suit in January 1972. Seven months after the New York Court of Appeals affirmed the Appellate Division's holding for the Board of Regents in November 1975, Tomanio brought a section 1983 action. Thus, the action was commenced almost one and a half years after the expiration of the three year statute of limitations. The Supreme Court held that Tomanio's state court proceedings did not toll the running of the statute of limitations because New York law did not provide for such a tolling mechanism.

The second line of cases involves diversity actions. Applying *Erie Railroad Co. v. Thompkins*, 304 U.S. 64, 75, 58 S.Ct. 817, 821, 82 L.Ed. 1188 (1938), the Court consistently has held that in diversity actions "where one is barred from recovery in the state court, he should likewise be barred in the federal court," *Ragan v. Merchants Transfer & Warehouse Co., Inc.*, 337 U.S. 530, 532, 69 S.Ct. 1233, 1234, 93 L.Ed. 1520 (1949); *see Walker v. Armco Steel Corp.*, 446 U.S. 740, 748, 100 S.Ct. 1978, 1982, 64 L.Ed.2d 659 (1980); *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945), and that state law

that determines when actions commence should govern. 337 U.S. at 533–34, 69 S.Ct. at 1234–35; *Walker v. Armco Steel Corp.*, 446 U.S. at 751, 100 S.Ct. at 1985. *But cf. Hanna v. Plumer*, 380 U.S. 460, 469, 472–73, 85 S.Ct. 1136, 1142–43, 1144–45, 14 L.Ed.2d 8 (1965) (federal rule controls over state rule when rules directly conflict and when no change in outcome results). In diversity actions, Fed.R.Civ.P. 3 "governs the date from which various timing requirements of the federal rules begin to run, but does not affect state statutes of limitations." 446 U.S. at 751, 100 S.Ct. at 1985.

Throughout these diversity cases, however, the Court has been careful to distinguish actions based on federal laws such as section 1983. *E.g., Guaranty Trust Co. v. York*, 326 U.S. 99, 101, 65 S.Ct. 1464, 1466, 89 L.Ed. 2079 (1945) (Frankfurter, J.) ("We put to one side the considerations relevant in disposing of questions that arise when a federal court is adjudicating a claim based on a federal law."); *see, e.g., Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533, 69 S.Ct. 1233, 1235, 93 L.Ed. 1520 (1949) (distinguishing *Bomar* as "a suit to enforce rights under a federal statute"). In *Walker*, which was decided after *Tomanio*, Justice Marshall explicitly reserved decision on the *Bomar* issue. "We do not here address the role of Rule 3 as a tolling provision for a statute of limitations, whether set by federal law or borrowed from state law, if the cause of action is based on federal law." 446 U.S. at 751 n.11, 100 S.Ct. at 1985 n.11; *see Gutierrez v. Vergari*, 499 F.Supp. 1040, 1049 n.7 (S.D.N.Y.1980).

5. Section 1988 is as follows:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIME," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable rem-

edies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988 (1976).

In light of the Court's consistent approach to statutes of limitations in federal actions and its equally consistent statements in diversity actions, it is apparent that the Supreme Court has not overruled *Bomar v. Keyes* and has given no indication that it would if directly confronted with the issue. A close look at the mandate of 42 U.S.C. § 1988 sheds some light on the problem. Section 1988 provides, in part, that

in all cases where [federal laws] are not adapted to the object [of protecting and vindicating civil rights], or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

42 U.S.C. § 1988 (1976); *see supra* note 5. The federal action cases, *Johnson, Robertson*, and *Tomanio*, have all applied state law in areas in which federal law was deficient—*Johnson* : in respect to the effect of the filing of an EEOC complaint, *Robertson* : in respect to the death of a plaintiff, and *Tomanio* : in respect to the prosecution of an independent state action. The deficiency in those cases was the absence of any federal law on the issue. The issue then became whether the state rule used to correct the deficiency was inconsistent with the Constitution or federal law. 42 U.S.C. § 1988 (1976). In the present case, however, federal law does provide a solution, and it is unnecessary to resort to state law. Fed.R.Civ.Proc. 3 provides that "[a] civil action is commenced by filing a complaint with the court." Because federal law is not deficient on this subject, state law does not apply. *Cf. Hanna v. Plumer*, 380 U.S. 460, 469, 472–73, 85 S.Ct. 1136, 1142–43, 1144–45, 14 L.Ed.2d 8 (1965) (in diversity action, existing federal rule controls when it con-

flicts directly with state rule); *Gutierrez v. Vergari*, 499 F.Supp. 1040, 1049 n.7 (S.D.N.Y.1980) (Fed.R.Civ.P. 3 controls because *Walker* declined to disturb *Bomar* rule).

This conclusion is consistent with the rules which determine when causes of action for federal claims accrue. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981), held that federal law governs when causes of action accrue in section 1983 suits, despite existing state law on the issue. If federal law determines when a statute of limitations begins to run, it is consistent for federal law to determine when an action commences and halts the running of the statute. This is not inconsistent with *Tomanio*. Because federal law provides no statute of limitations, courts must look to state statutes of limitations and their related tolling rules to fill the void. The state rules in *Tomanio* governed when it was appropriate to suspend the running of the statute of limitations in midcourse. Federal law contains no such rules. Federal law, however, does exist around the boundaries of the borrowed statutes of limitations, and it controls when actions accrue and when they commence. The present decision does not tread into the realm of borrowed state statutes of limitations, which is governed by *Tomanio*. Instead, it stays within the area that has been recognized consistently as the realm of federal procedure.

I find that the rule of *Bomar v. Keyes* is controlling. Therefore, I find that plaintiff's Third and Fourth Claims are not time-barred.[6] Defendant's motion for summary judgment is denied in so far as it is based on the claim that plaintiff's action is barred by the statute of limitations.

## II

■ I now discuss defendants' due process grounds for summary judgment: they are that plaintiff was given adequate notice

---

**6.** Because of this finding, I do not address plaintiff's assertion that N.Y.Civ.Prac.Law § 203(b)(5) permits service to be effected on

defendants within sixty days after filing, thus tolling the statute of limitations. Plaintiff's Memorandum at 35.

and that plaintiff had no right to a pretermination hearing. Relevant to a determination of this question is what procedural protection was she entitled to and what notice and opportunity did she actually receive.

■ The initial inquiry—into what due process protection a plaintiff is entitled to— is what is the nature of plaintiff's property interest. "The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *see Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972); *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961).

Plaintiff claims that she has a property interest in her teaching position, which is based on New York law. Under state law, her tenured status prohibits defendants from terminating her unless 1) a pretermination hearing is held to determine that she should be terminated for specific reasons, N.Y.Educ.Law § 3012(2) (McKinney 1981), or 2) she is the least senior teacher in her tenure area. *Id.* § 2510(2). In addition, if terminated pursuant to section 2510(2), plaintiff has the right to be rehired to the first available job similar to the one she lost if she is the most senior teacher on the preferred eligibles list. Plaintiff claims that she has 9.3 years of seniority and was entitled to the procedural protections provided in New York law. She also claims that even if she has only 4.3 years of seniority, as defendants claim, she is still not the least senior teacher in her tenure area and therefore was entitled to a section 3012(2) pretermination hearing. Plaintiff's Memorandum at 45.

Defendants claim that plaintiff has no protected property interest under state law. They assert that she had only 4.3 years of seniority and that sections 2510(2) and 2510(3) were applied to her correctly. They state that *Cohen I* and *Cohen II* determined her seniority and thus her property interest under state law. The due process clause, they correctly note, " 'is not a guarantee against incorrect or ill-advised personnel decisions.' " Defendants' Reply Memorandum at 39 (quoting *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976)).

Thus, the parties present radically different views of the nature of plaintiff's property interests in this action. The recent proceedings in *Cohen II* indicate that plaintiff's interests under state law are still in a state of flux. The Appellate Division has remanded the case to the Supreme Court, Rockland County, for a decision on the merits, which will determine plaintiff's seniority for at least her claims that she was not rehired as required by section 2510(3). 84 A.D.2d 536, 537, 443 N.Y.S.2d 170, 172 (1981).

■ In cases in which state law or its application is ambiguous, the Supreme Court has approved a form of abstention first used in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), under which the federal court abstains pending state determination of questions of state law. "[O]ur abstention cases have dealt with unresolved questions of state law which only a state tribunal could authoritatively construe." *Wisconsin v. Constantineau*, 400 U.S. 433, 438, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971); *see Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 44, 91 S.Ct. 156, 158, 27 L.Ed.2d 174 (1970). "*Pullman* abstention," as it is called, is appropriate when a federal constitutional issue "might be mooted or presented in a different posture by state court determination of pertinent state law." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959); *see Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).[7] Abstention

---

**7.** In addition to *Pullman* abstention, several other types of abstention exist which are based

may be raised by courts sua sponte. *Bellotti v. Baird*, 428 U.S. 132, 143 n.10, 96 S.Ct. 2857, 2864 n.10, 49 L.Ed.2d 844 (1976). The Court has applied the doctrine in cases in which state court proceedings are not even pending. *See, e.g., id.* at 147, 96 S.Ct. at 2866 (federal court should abstain until state court construction of anti-abortion statute is made); *Boehning v. Indiana State Employees Ass'n*, 423 U.S. 6, 8, 96 S.Ct. 168, 170, 46 L.Ed.2d 148 (1975) (district court was correct to abstain in § 1983 suit until state court construction of Indiana Administrative Adjudication Act was sought); *cf. Elkins v. Moreno*, 435 U.S. 647, 668–69, 98 S.Ct. 1338, 1350–51, 55 L.Ed.2d 614 (1978) (question of application of state law on "domicile" certified to Maryland Court of Appeals). It would thus seem to be prudent to apply the doctrine in a case such as the instant one in which state court proceedings are moving toward a resolution of the problem.[8]

Having found that I should abstain pending resolution of the state law questions, which bear on plaintiff's due process claims, I do not discuss defendant's summary judgment motion on plaintiff's equal protection claim or plaintiff's discovery requests. Upon resolution of *Cohen II*, I will accept applications to reopen consideration of defendants' summary judgment motion on the due process and equal protection claims and to reopen consideration of plaintiff's discovery request. Until such time, all discovery and other proceedings in this action are stayed.

### III

■ The last issue is defendant's request that I certify my decision for interlocutory appeal under 28 U.S.C. 1292(b). First, I deny the request to certify my denial of defendants' summary judgment motion

---

on preserving comity between federal and state courts. Under the *Younger* abstention doctrine, a federal court should abstain from enjoining state criminal proceedings. *Younger v. Harris*, 401 U.S. 37, 43–46, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971). This type of abstention has been extended by the Supreme Court to state nuisance proceedings antecedent to a criminal prosecution, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 606–07, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975), and to the collection of state taxes, *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297–98, 63 S.Ct. 1070, 1072–73, 87 L.Ed. 1407 (1943). The third abstention doctrine requires federal courts to abstain when a question of state law, although not dispositive of the federal constitutional question, involves a state public policy issue of wider import than the case at bar. *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 30, 79 S.Ct. 1070, 1073–74, 3 L.Ed.2d 1058 (1959). *See generally Colorado River Water Conservative District v. United States*, 424 U.S. 800, 813–16, 96 S.Ct. 1236, 1244–46, 47 L.Ed.2d 483 (1976) (summarizing types of abstention doctrine).

**8.** My application of the *Pullman* abstention doctrine in this case is not the imposition of an exhaustion of state remedies requirement. If the application of state law to plaintiff's case was not ambiguous, then the use of the abstention doctrine would be a de facto imposition of an exhaustion requirement. *McNeese v. Board of Education*, 373 U.S. 668, 672, 83 S.Ct. 1433, 1436, 10 L.Ed.2d 622 (1963) ("We would defeat [the purposes of section 1983] if we held that

assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court."); *see Zwickler v. Koota*, 389 U.S. 241, 251 n.14, 88 S.Ct. 391, 397 n.14, 19 L.Ed.2d 444 (1967) ("We have frequently emphasized that abstention is not to be ordered unless the state statute is of an uncertain nature, and is obviously susceptible to a limiting construction.") *But see Patsy v. Florida International University*, 634 F.2d 900, 912 (5th Cir. 1980), *cert. granted,* —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981) (No. 80–1874) (plaintiff under § 1983 must exhaust state remedies). *Pullman* abstention relates to the construction of a state statute or its application, a competence presumed to be possessed by state courts; an exhaustion requirement in section 1983 actions would relate to a state court's ability to decide federal constitutional issues, a competence also shared by federal courts. At present, there is no exhaustion requirement in section 1983 actions. The only exceptions are in cases in which ongoing state criminal proceedings, *Younger v. Harris*, 401 U.S. 37, 43–46, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971), state contempt proceedings, *Juidice v. Vail*, 430 U.S. 327, 334, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977), or civil enforcement proceedings, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 606–07, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975), are sought to be enjoined. When, as here, however, it is the application of state law that is unclear, exhaustion is not involved; abstention is appropriate in order to provide the state an opportunity to clarify its own law.

based on the statute of limitations without prejudice to defendants' right to renew after final resolution of *Cohen II* in the state courts. Because further proceedings in this case have been stayed, defendant will suffer no harm from the denial. Moreover, certification of the issue of the statute of limitations and its tolling would not materially advance the termination of the litigation. As noted above, plaintiff's Second, Fifth, Sixth, Seventh, and Eighth Claims are all well within the limitations period and therefore appellate reversal of my decision on the other Claims would not remove the necessity for further proceedings.

As to my decision to abstain pending state court resolution of the nature of plaintiff's property interest under state law, I retain jurisdiction. *American Trial Lawyers Ass'n v. New Jersey Supreme Court*, 409 U.S. 467, 469, 93 S.Ct. 627, 629, 34 L.Ed.2d 651 (1973) (under *Pullman* abstention doctrine, federal court should retain jurisdiction); *Zickler v. Koota*, 389 U.S. 241, 244 n.4, 88 S.Ct. 391, 393 n.4, 19 L.Ed.2d 444 (1967) (same). I see no reason to certify my abstention order, in that I have made no decision on a "controlling question of law as to which there is substantial ground for difference of opinion" and that certification will not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (1976).

*Order*

Defendants' summary judgment motion based on the statute of limitations is denied. Defendants' summary judgment motion based on plaintiff's due process and equal protection claims is adjourned pending a final decision in *Cohen II*. Plaintiff's discovery motion is also adjourned and all discovery and other proceedings are stayed until state court proceedings in this matter are concluded. Defendants' motion for certification of my abstention order is denied with prejudice. Defendants' request for certification of my order denying summary judgment on the basis of the statute of limitations is denied without prejudice to reassert once state court proceedings are concluded.

SO ORDERED.